*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ROBERT DANIEL HUNT,

Defendant-Appellant.

UNPUBLISHED
April 8, 2021

No. 352385
Oakland Circuit Court
LC No. 19-269674-FH

Before: FORT HOOD, P.J., and GADOLA and LETICA, JJ.

PER CURIAM.

Defendant pleaded guilty to charges of second-degree home invasion, MCL 750.110a(3); possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*); and two counts of stealing or retaining a financial transaction device without consent, MCL 750.157n(1). He was sentenced as a second-offense habitual offender, MCL 769.13, to 4 ½ to 22 ½ years' imprisonment for his second-degree home invasion conviction, 1 to 6 years' imprisonment for his possession of less than 25 grams of cocaine conviction, and 1 to 6 years' imprisonment for each of his stealing or retaining a financial transaction device without consent convictions. We granted defendant's application for leave to appeal,[1] and now affirm.

## I. BACKGROUND FACTS

In December 2018, defendant broke into a home between midnight and 6:00 a.m. The victims, a husband, wife, and three-year-old child, were in the house and asleep in their bedrooms. Subsequent police investigation revealed that defendant most likely entered the house through an unlocked sliding glass door because there were no signs of a forced entry. Once inside the house, defendant took a laptop computer and a laptop bag, $100 in cash from the kitchen counter, and approximately $75 in change. Hours later, defendant was arrested outside of a nearby home, where he lived. A search of defendant's person revealed six bags of cocaine. A search of defendant's

---

[1] *People v Hunt*, unpublished order of the Court of Appeals, entered February 28, 2020 (Docket No. 352385).

house uncovered two checkbooks that were previously reported stolen from cars, a woman's purse earlier reported stolen after a separate home invasion, and the laptop and bag taken from the victims' home.

Pursuant to a plea agreement, defendant pleaded guilty to the charges listed above in exchange for dismissal of the charge of first-degree home invasion, MCL 750.110a(2)(b) (another person lawfully present in the dwelling). At sentencing, defendant objected to the assessment of 10 points for offense variable (OV) 9 because the victims were not placed in danger of injury or death because he neither harmed, nor threatened to harm, them. Further, defendant argued that the victims, who were all sleeping at the time, were unaware of his presence in the home. The trial court rejected these arguments, and assessed 10 points under OV 9. This appeal followed.

## II. DISCUSSION

Defendant argues he is entitled to resentencing because the trial court erroneously assessed 10 points for OV 9. We disagree.

### A. STANDARD OF REVIEW

"The interpretation and application of the sentencing guidelines present questions of law that we review de novo." *People v Laidler*, 491 Mich 339, 342; 817 NW2d 517 (2012). "We review for clear error the trial court's factual determinations used for sentencing under the sentencing guidelines, facts that must be supported by a preponderance of the evidence." *People v Dickinson*, 321 Mich App 1, 20-21; 909 NW2d 24 (2017). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Chaney*, 327 Mich App 586, 587 n 1; 935 NW2d 66 (2019) (quotation marks and citation omitted).

### B. LAW AND ANALYSIS

OV 9 addresses the number of victims. MCL 777.39; *People v Fawaz*, 299 Mich App 55, 62; 829 NW2d 259 (2012). An assessment of 10 points is appropriate when "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . . ." MCL 777.39(1)(c). "A person may be a victim under OV 9 even if he or she did not suffer actual harm; a close proximity to a physically threatening situation may suffice to count the person as a victim." *People v Gratsch*, 299 Mich App 604, 624; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013).

Defendant does not dispute that three people were present in the residence when the home invasion occurred. But defendant makes two assertions in support of his argument that the trial court erred in assessing 10 points for OV 9. First, he asserts that OV 9 only applies when there are "direct victims"—in other words, victims whose involvement in the offense went beyond a "mere presence" to the offense. Defendant asserts the victims in this case were not the sort contemplated by OV 9 because they were merely present inside the home on the night in question. Second, defendant argues the danger contemplated by OV 9 cannot be on the basis of what could have happened—rather, the trial court must only consider what actually happened. Because defendant neither harmed the victims, nor intended to harm the victims, they were not in danger of injury or death. Accordingly, defendant asserts the trial court erroneously assessed points for OV 9 because the victims in this case were never placed in danger of actual harm.

We first consider defendant's argument that OV 9 only contemplates "direct victims" instead of those who had a "mere presence" at the scene. In making this argument, defendant cites this Court's holdings in *People v Carrigan*, 297 Mich App 513, 515-516; 824 NW2d 283 (2012),[2] and *People v Phelps*, 288 Mich App 123, 138; 791 NW2d 732 (2010), overruled on other grounds *People v Hardy*, 494 Mich 430, 438 n 18; 835 NW2d 340 (2013). Defendant contends the victims in this case do not qualify as "victims" under OV 9 because, in sleeping through the event, they were merely present at the time of the home invasion and not in danger of harm.

In *Carrigan*, the defendant vandalized two school buildings, which resulted in property damage. 297 Mich App at 514, 516. The trial court assessed 25 points for OV 9 because each community member suffered property loss. *Carrigan*, 297 Mich App at 516. This Court disagreed, and, instead, held that OV 9 was properly scored at zero points because the members of the community were only indirectly harmed. *Id.* This Court explained that the trial court's reasoning, taken to its logical conclusion, "could result in a score of 25 points for OV 9 [for nearly every criminal offense] because the community as a whole always indirectly suffers when a crime is committed." *Id.* Because the record evidence showed that "two schools, each owned by the same school district, suffered property loss," zero points should have been assessed as fewer than four victims suffered property loss. *Id.*

Turning to *Phelps*, this Court considered a situation in which the defendant was convicted of first-degree criminal sexual conduct for the sexual assault of a teenager while her friends were asleep in the same room. *Phelps*, 288 Mich App at 129. This Court determined that the trial court erroneously assessed points for OV 9 because "[t]here was no evidence on the record to support the conclusion that two people in this case were in danger of physical injury or loss of life . . . when [the defendant] committed criminal sexual conduct crimes against one victim only." *Id.* at 138-139. Indeed, the evidence showed that the defendant targeted his actions solely toward the victim and not her friends. *Id.* at 125-131.

*Carrigan* and *Phelps*, when read together, evidence that a "victim" for purposes of OV 9 is one who is targeted by the defendant and suffers a personal loss associated with the charged offense. In this case, defendant broke into a house in the middle of the night while the home's residents slept. The residents of the home were not merely members of the community who suffered an indirect harm by the break-in. Instead, the residents were personally affected and directly harmed by the break-in. Thus, the victims in this case are factually distinguishable from the community in *Carrigan* because the victims here were directly and personally damaged by defendant's conduct. Accordingly, the residents of the home were not indirect victims.

We next consider defendant's argument that OV 9 requires the victims to in fact be in danger of actual harm. In making this argument, defendant suggests that because he did not attempt or intend to harm the victims, there was no "danger of physical injury or death." Our Supreme Court's decision in *People v Morson*, 471 Mich 248, 261-262; 685 NW2d 203 (2004), is

---

[2] We note that defendant asserts that *Carrigan* stands for the proposition that a person's mere presence at the scene of a crime does not create a presumption that the person was placed in danger. However, it appears that defendant mistakenly cited *Carrigan* because it did not involve the issue of presence at a crime scene. See generally *Carrigan*, 297 Mich App at 513-516.

partially instructive on this issue because it emphasizes that a person may be a victim under OV 9 even when that person is not a victim of the sentencing offense. In *Morson*, the trial court assessed 10 points for OV 9 because there were two victims—the victim who was robbed of her purse and the bystander who tried to stop the robbery. *Id*. at 251-253. The Court determined that both were victims for purposes of OV 9, stating that even though "[the victim] was the only person actually robbed, [the bystander], who . . . responded to [the victim's] call for help, was also 'placed in danger of injury or loss of life' by the armed robbery of [the victim]." *Id*. (citation omitted).

Defendant argues that the facts of this case are distinct from *Morson* because the residents of the home were not subject to the danger of harm, unlike the bystander in *Morson*. Defendant's argument is unpersuasive because home invasions, when the occupants are inside the home, are inherently dangerous. Indeed, the United States Supreme Court recognized this inherent danger in a case about burglary[3]: "Burglary is dangerous because it creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate." *Quarles v United States*, ___ US ___, ___; 139 S Ct 1872, 1879; 204 L Ed 2d 200 (2019) (quotation marks and citation omitted). Furthermore, this Court has stated that "close proximity to a physically threatening situation may suffice to count the person as a victim," for purposes of OV 9. *Gratsch*, 299 Mich App at 624. Because the residents were in the home during the inherently dangerous night-time home invasion, they were placed in danger of physical injury or death.

This conclusion is consistent with this Court's rationale for upholding an assessment of 10 points for OV 9 in *People v Waclawski*, 286 Mich App 634, 684; 780 NW2d 321 (2009). In *Waclawski*, the defendant was convicted of three counts of criminal sexual conduct for taking photographs of minor boys that depicted a variety of sexual situations. *Id*. at 641-642. Each photograph was taken on a different day, so the defendant argued that each photograph established that there was only one victim present for each instance of sexual abuse. *Id*. at 682. This Court disagreed, stating that the three boys often stayed the night at the defendant's house together, and it was reasonable to infer that the three were all there when each photograph was taken. *Id*. Because there were three victims who were placed in danger of injury, an assessment of 10 points for OV 9 was warranted. *Id*.

---

[3] The definition of the statutory term burglary is substantially similar to the Michigan crime of home invasion. Compare *Taylor v United States*, 495 Mich 575, 599; 110 S Ct 2143; 109 L Ed 2d 607 (1990) (stating that burglary is an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."), with MCL 750.110a(2) (providing that first-degree home invasion is when a person "breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling," and the person is armed with a dangerous weapon or another person is lawfully in the dwelling).

Our holding in *Waclawski* evinces our belief that victims need not have an awareness of the potential danger for OV 9 to apply.  Further, the dangerous nature of a home invasion shows that its victims are of the sort contemplated under OV 9 so long as they were present at the time the home invasion occurred.  Accordingly, the trial court did not err when it assessed 10 points under OV 9.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Michael F. Gadola